SUE CAMPBELL
Attorney at Law, State Bar Number 98728
1155 North First Street, Suite 101
San Jose, California 95112
Phone: (408) 277-0648
Fax: (408) 938-1035

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB TRAGNI AND WILLIAM T. BARROW, AS TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 332 HEALTH AND WELFARE AND PENSION TRUST FUNDS, NEBF, JEIF, NECA SERVICE CHARGE, NECA, DUES CHECK OFF AND APPRENTICESHIP TRAINING TRUST FUNDS,<br><br>Plaintiffs,<br><br>vs.<br><br>RPD ELECTRICAL SERVICES CO., INC., a California Corporation doing business as ELECTRICAL SERVICE COMPANY,<br><br>Defendants. | CASE NO.: C07-04351 RMW PVT<br><br>DECLARATION OF ALLISON JOHNSON<br><br>DATE: May 23, 2008<br>TIME: 9:00 A.M.<br>PLACE: Courtroom 6, 4th Floor<br><br>JUDGE: Hon. Ronald M. Whyte |

I, ALLISON JOHNSON, do declare as follows:

1. At this time, and all times pertinent, I have been and am the account administrator for I.B.E.W. Local 332 Trust Funds. In that regard, I am responsible for processing transmittals and payments received by contractors for payment to the following Trust Funds: Health and Welfare Trust, Apprenticeship Trust, National Electrical Benefit Fund, JEIF, NECA Service Charge, NECA.

2. According to the records of the I.B.E.W. Local 332 Trust Funds, the Defendant RPD ELECTRICAL SERVICES CO., INC., a California Corporation doing business as

ELECTRICAL SERVICE COMPANY, signed an Inside Wireman's collective bargaining agreement with IBEW Local 332 on or about August 27, 1997, and a Residential collective bargaining agreement on or about May 1, 1995. Both agreements were in effect then and continue to be in effect. A copy of each of the Letter of Assent-A to the collective bargaining agreements which is mentioned in the records of the I.B.E.W. Local 332 Trust Funds are attached as Exhibit "A".

3. Pursuant to Article VI, Section 6.01 of the Residential Collective Bargaining Agreement (attached as Exhibit 1 to the First Amended Complaint), the terms of the applicable trust agreement are incorporated into the collective bargaining agreement regarding collection of delinquent contributions. Pursuant to Article XIV, Section 14.04, page 31, of the Residential Collective Bargaining Agreement, interest at the rate of 10% per year, liquidated damages of 15% of the delinquent contributions, and reasonable attorney's fees and costs incurred are also due and owing on the delinquent contributions. A copy of the pertinent sections of the trust agreement are attached as Exhibit "B". The trust agreement provides for liquidated damages of 10%, consequently we are requesting 10% liquidated damages pursuant to the trust document and the collection policy of the trust funds.

4. Attached to my declaration as Exhibit "C" are transmittals for August, September, October, November and December 2007. These transmittals were submitted by Electrical Services Company. A partial payment of $49,528.32 has been made on the August 2007 transmittals. There is a balance remaining of $57,949.62 on the August transmittal. The September through December 2007 transmittals are due in full. The total amount due in fringe benefit contributions is $287,781.04.

5. Defendant Electrical Services made late payments for the months of February 2007 and August 2007 through December 2007, and 10% liquidated damages of $37,240.46 are due on those delinquent fringe benefits as follows:

///

///

///

| Month Delinquent | Amount of Delinquent Fringe Benefits | Liquidated Damages Assessed |
|---|---|---|
| February 2007 | $35,095.30 | $ 3,509.53 |
| August 2007 | $107,477.94 | $10,747.79 |
| September 2007 | $70,347.91 | $ 7,034.79 |
| October 2007 | $83,285.71 | $ 8,328.57 |
| November 2007 | $40,255.87 | $ 4,025.59 |
| December 2007 | $35,941.93 | $ 3,594.19 |
| Total Liquidated Damages: | | $37,240.46 |

6. In December 2001, the Trust Funds conducted a study to determine the reasonableness of liquidated damages charged by the Trust Funds. The Trust Funds also periodically review their collection procedures and costs to determine if the ten percent liquidated damages being charged is reasonable. A true and correct copy of that study, as well as a copy of the collection procedures, is attached to this declaration as Exhibit "D". Both of these documents are incorporated by reference as evidence of the reasonableness of the liquidated damages requested. The final collection document was prepared and presented by my office and is a true and correct copy of that study.

7. Interest at 10% has been calculated on the contributions which are currently outstanding for August through December 2007 as follows:

a. August 2007 contributions of $107,477.94 was due September 20, 2007. A partial payment of $49,528.32 was made January 20, 2008, leaving a balance due of $57,949.62.

Interest at 10% per year is calculated for 122 days from September 20, 2007, through January 20, 2008.

$107,477.94 x 10% = $10,747.79 per year; $10,747.79 ÷ 365 days = $29.45 per day; and $29.45 x 122 days = $3,592.41.

Interest at 10% per year is calculated for 60 days from January 20, 2008 through March 20, 2008, on the balance due of $57,949.62.

$57,949.62 x 10% = $5,794.96 per year; $5,794.96 ÷ 365 days = $15.88 per day, and

$15.88 per day x 60 days = $1,905.60.

Total interest due for August 2007 contributions is $4,545.21.

b. September 2007 contributions of $70,347.91 was due October 20, 2007.

Interest at 10% per year is calculated for 152 days from October 20, 2007 through March 20, 2008.

$70,347.91 x 10% = $7,034.79 per year; $7,034.79 ÷ 365 days = $19.27 per day, and $19.27 per day x 152 days = $2,929.55.

c. October 2007 contributions of $83,285.71 was due November 20, 2007.

Interest at 10% per year is calculated for 121 days from November 20, 2007 through March 20, 2008.

$83,285.71 x 10% = $8,328.59 per year; $8,328.59 ÷ 365 days = $22.82 per day, and $22.82 per day x 121 days = $2,761.22

d. November 2007 contributions of $40,255.87 was due December 20, 2007.

Interest at 10% per year is calculated for 91 days from December 20, 2007 through March 20, 2008.

$40,255.87 x 10% = $4,025.59 per year; $4,025.59 ÷ 365 days = $11.03 per day, and $11.03 per day x 91 days = $1,003.73

e. December 2007 contributions of $35,941.93 was due January 20, 2008.

Interest at 10% per year is calculated for 60 days from January 20, 2008 through March 20, 2008.

$35,941.93 x 10% = $3,594.19 per year; $3,594.19 ÷ 365 days = $9.85 per day, and $9.85 per day x 60 days = $591.00

8. Pursuant to the Declaration of Sue Campbell, attorney's fees of $11,115.00 and costs of $602.00 have been incurred in the total amount of $11,717.00.

9. Consequently, the total amount due by RPD Electrical Services Company, Inc. doing business as Electrical Services Company to the following Trust Funds (Health and Welfare Trust, Apprenticeship Trust, National Electrical Benefit Fund, JEIF, NECA Service Charge, NECA) is $348,569.21.

| | |
|---|---|
| Fringe Benefits for 8/07 through 12/07 | $287,781.04 |
| Liquidated Damages for 2/07 and 8/07 thru 12/07 | $ 37,240.46 |
| Interest on 8/07 thru 12/07 Fringe Benefits | $ 11,830.71 |
| Attorney's Fees | $ 11,115.00 |
| Costs | $ 602.00 |
| Total: | $348,569.21 |

10. Plaintiffs performed all conditions on their part to be performed and Defendant RPD ELECTRICAL SERVICES CO., INC., a California Corporation doing business as ELECTRICAL SERVICE COMPANY, continues to owe these monies. Plaintiff seeks judgment pursuant to this declaration.

11. Said collective bargaining agreement and the applicable trust agreement further provides attorney's fees shall be awarded in the event suit is filed to collect principal or liquidated damages under the agreement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 4/3/08

ALLISON JOHNSON

AUG.21 2007 07:54 4089795500 #4749 P.002/004

LETTER OF ASSENT - A

In signing this letter of assent, the undersigned firm does hereby authorize NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION - SANTA CLARA VALLEY CHAPTER as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved [2] INSIDE WIREMAN'S labor agreement between the [1] NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION SANTA CLARA VALLEY CHAPTER and Local Union [3] 332, IBEW. In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] 27th day of AUGUST, 1997. It shall remain in effect until terminated by the undersigned employer giving written notice to the [1] NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION SANTA CLARA VALLEY CHAPTER and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

APPROVED
INTERNATIONAL OFFICE - I.B.E.W.
OCT 26 1998
J.J. Barry, President
This approval does not make the International a party to this agreement.

RPD ELECTRICAL SERVICE COMPANY, INC.
[5] Name of Firm

242 Hillsdale Avenue
Street Address/P.O. Box Number

San Jose, CA 95136
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.: 94-3082717

| SIGNED FOR THE EMPLOYER | SIGNED FOR THE UNION [3] 332, IBEW |
|---|---|
| BY [7] (signature) (original signature) | BY [7] (signature) (original signature) |
| NAME [8] Richard P. Deane | NAME [8] Steve G. Wright |
| TITLE/DATE President 8/27/97 | TITLE/DATE Business Manager 8/27/97 |

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES

[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

EXHIBIT "A"

AUG/21 2007 07:54 4089795500 #4749 P.001/004

# LETTER OF ASSENT - A

In signing this letter of assent, the undersigned firm does hereby authorize NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION - SANTA CLARA VALLEY CHAPTER as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved.[2] RESIDENTIAL labor agreement between the [1] NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION SANTA CLARA VALLEY CHAPTER and Local Union[3] 332, IBEW. In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the[4] 1st day of MAY, 1995. It shall remain in effect until terminated by the undersigned employer giving written notice to the [1] NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION SANTA CLARA VALLEY CHAPTER and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

RPD ELECTRICAL SERVICE COMPANY, INC. dba ELECTRICAL SERV[ICE]
[5] Name of Firm

(408) 265-2850

242 Hillsdale Avenue
Street Address/P.O. Box Number

San Jose, CA 95136
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.: 94-3082717

APPROVED
INTERNATIONAL OFFICE — I. B. E. W.
JUN 20 1995
J. J. Barry, President
This approval does not make the International a party to this agreement

| SIGNED FOR THE EMPLOYER | SIGNED FOR THE UNION[3] 332, IBEW |
|---|---|
| BY[7] [signature] (original signature) | BY [signature] (original signature) |
| NAME[8] R. P. Deane | NAME[8] Steve G. Wright |
| TITLE/DATE President 5/1/95 | TITLE/DATE Business Manager 5/1/95 |

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES

[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

EXHIBIT "A"

MAY 1 4 RECD

AMENDED AGREEMENT AND DECLARATION OF TRUST
ELECTRICAL WORKERS HEALTH AND WELFARE TRUST FUND

This amended Agreement and Declaration of Trust has been entered into this 16th day of December, 1976 by and between NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION-SANTA CLARA VALLEY CHAPTER, hereinafter referred to as the "Employer Association", and LOCAL NO. 332 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, hereinafter referred to as the "Union".

WITNESSETH:

WHEREAS, there has been heretofore established, and there now exists the Electrical Workers Health and Welfare Trust Fund for the purpose of providing certain Health and Welfare benefits as hereinafter described, and,

WHEREAS, said Trust has existed pursuant to the Agreement and Declaration of Trust executed June 1, 1959, and,

WHEREAS, the enactment of the Employee Retirement Income Security Act of 1974, hereinafter referred to as "ERISA", has required certain extensive amendments to the aforesaid Agreement and Declaration of Trust, and,

WHEREAS, it is the desire of the signatory parties hereto to amend said Agreement and Declaration of Trust, so as to incorporate therein all of the amendments heretofore adopted and as need be adopted in order to comply with ERISA, and,

WHEREAS, the Union and the Employer have heretofore entered into a collective bargaining agreement, which is now in effect, and from time to time hereafter, will execute further and additional collective bargaining agreements, and/or amendments thereto, which in addition to other provisions, maintains the

EXHIBIT "B"

Section 11. Contributions to this Trust shall not constitute or be deemed to be wages and no Employee shall be entitled to receive any part of the contributions made or required to be made to the Trust in lieu of the benefits provided by the Health and Welfare Plan.

ARTICLE III

CONTRIBUTIONS TO THE TRUST

Section 1. Contributions shall be paid into the Trust in such manner and at such time and place, and on monthly transmittal reports as the Board of Trustees may prescribe.

Section 2. Contributions to the Trust shall be payable monthly. Said contributions shall be forwarded to a central depository to be designated by the Board of Trustees. Said payments are to continue from month to month subject to the provisions of the collective bargaining agreement.

Section 3. The amount of the contribution shall be such amount as is set forth in the current collective bargaining agreement between the Employer and the Union. If the amount of the contribution is changed by the collective bargaining agreement, the Employer shall contribute the changed amount as required by the collective bargaining agreement.

Section 4. Each monthly contribution to the Trust shall be made promptly and shall include all Employees covered by this Agreement who shall have worked during the Employer's payroll month and shall be paid on or before the 26th day of the calendar month following the payroll month in which the Employee worked. The parties recognize and acknowledge that the regular and prompt payment of Employer contributions to the Trust is essential to the maintenance of the Trust, and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Trust which would result from the failure of the Employer to pay his contributions in full within the time above provided. There-

EXHIBIT "B"

fore, the amount of damage to the Trust resulting from any such failure shall be presumed to be the sum of 10% or $20.00, whichever is greater, for each month the Employer is delinquent and/or deficient in his payment. This amount shall become due and payable to the Trust by the Employer as liquidated damages and not as a penalty immediately following the date the contribution became delinquent and shall be in addition to the required contribution. The Trustees may waive payment of all or a part of such liquidated damages in a particular case upon good cause to the Trustees being established.

Section 5. The failure of any Employer to make the required contributions hereinabovo provided shall be deemed a breach of this Agreement by said Employer, and such Employer shall be personally and directly liable under this Agreement for whatever benefits to which any or all of his eligible Employees may become entitled during the period of delinquency and denied to such employee by reason thereof, as provided under any group insurance policy or policies or other methods of providing said benefits which may be in effect under this Agreement at the time of such delinquency.

Section 6. Upon the failure or refusal of any Employer to make the required contributions, the Trustees shall have authority to pay or provide for the payment from the Fund for the cost of providing the benefits hereunder to the eligible Employees of such delinquent Employer, but the Trustees shall not be obligated either to said Employees or said Employer to make or provide such payments and they shall incur no liability whatsoever, either individually or collectively, for their failure or refusal to do so. In the event such payments are made by the Trustees from the Trust on behalf of a delinquent Employer, the Trust shall be reimbursed by said Employer for such payments and the Trustees shall have the authority to enforce such right of reimbursement.

EXHIBIT "B"

Section 7. Nothing contained herein shall be deemed to authorize or prevent economic action by the Union against any Employer who is delinquent in his contributions to the Trust. All rights of the Union to refuse to furnish men to any delinquent Employer, or to withdraw employees from the job of any delinquent Employer, or to strike or take other economic action against a delinquent Employer, shall be determined by the provisions of the collective bargaining agreement and by applicable rules of law, and shall not be deemed affected in any way by this Agreement.

Section 8. The Trustees shall have the right themselves, or through any authorized representative, to audit the books and records of any Employer as may be necessary to determine if all liabilities of such Employer to the Trustees have been paid, and to determine that the correct contributions have been received for all persons for whom such Employer is required to make contributions. The Employer shall make such books and records available at all reasonable times and places, so that such audits may be conducted.

In the event an Employer's books are audited as above set forth, the Trustees shall have the right to charge said Employer the reasonable costs of said audit, if the audit reveals a delinquency.

Should an Employer refuse or after a reasonable time fail to comply with the request for an audit, the Trustees, in their sole discretion, may initiate any appropriate legal proceedings to obtain a court order compelling such defaulting Employer to submit to such audit. In such event any and all court costs and fees, including reasonable attorneys' fees, incurred by the Trust shall be paid by such defaulting Employer.

EXHIBIT "B"

Section 9. To the extent permitted by law, the Trustees, collectively or individually, shall have no liability with respect to the nonpayment of contributions by any employer contributor or other contributor. The Trustees shall have the power to demand, collect and receive employer contributions and they shall have the power to do all things necessary to collect and receive the contributions due to the Trust under the terms of the collective bargaining agreement, including the institution and prosecution or the intervention in any proceeding at law, equity or in bankruptcy and shall have the right to collect all sums due and owing to the Trust from all persons whatsoever. To the extent permitted by law, the Trustees shall have the power to compromise, settle or release claims or demands in favor of or against the Trust on such terms or conditions as the Trustees may deem desirable.

Section 10. If an employer contributor is delinquent in his payments, and the Trustees file any suit to collect such delinquent contributions, said employer contributor shall pay reasonable attorneys fees, costs of court, interest and all reasonable expenses incurred by the Trustees in the collection of said delinquent contributions.

Section 11. If an employer is delinquent on three occasions within any 12 month period, the Board of Trustees may establish the 21st day of the month as that employer's delinquent date for the next 12 months.

## ARTICLE IV

## BOARD OF TRUSTEES

Section 1. The Trust Fund shall be administered by a Board of Trustees which shall consist of six (6) Trustees. Three (3) Trustees shall be appointed by the Union, and three (3) Trustees shall be appointed by the Employer Association.

EXHIBIT "B"

Section 3. This Agreement and Declaration of Trust may be terminated by the Employer Association and the Union by an instrument in writing, executed by mutual consent at any time.

Section 4. In the event of termination, then the Trustees, after accounting for any and all funds and property remaining in the Trust and after payment of or making adequate provisions for all liabilities relating to or effecting this Trust, shall use the balance of the assets of the Trust, if any, remaining for the purpose of continuing the benefits herein provided for, and they shall adopt a plan or procedure for the fair and orderly administration of said remaining trust assets to accomplish such objective.

Thereafter, the Trustees shall be discharged of their duties and no longer responsible under this Trust Agreement.

IN WITNESS WHEREOF, the Employer Association and the Union have executed this amended Agreement and Declaration of Trust as of the day and year first above written.

| NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION-SANTA CLARA VALLEY CHAPTER | LOCAL NO. 332 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS |
| --- | --- |
| [signature] | [signature] Albert E. Long |
| [signature] | [signature] |

The undersigned, hereby accept office as Trustees appointed pursuant to the foregoing amended Agreement and Declaration of Trust, and agree to act under and be subject to all of the terms and conditions of said Agreement and Declaration of Trust, including the responsibilities imposed upon Trustees under ERISA, and any other applicable state or federal law. The undersigned hereby declare that they hold the Trust Fund created

EXHIBIT "B"

# MONTHLY TRANSMITTAL
## ELECTRICAL INDUSTRY ACCOUNTS
UNDER THE JURISDICTION OF I.B.E.W. LOCAL 332 - RESIDENTIAL AGREEMENT

UAS ID# 3482
Permanent Contractor
First or Last report: NO

| | |
|---|---|
| Contractor: | R.P.D. Electrical Service Co., Inc. |
| Street Address: | 242 Hillsdale Avenue |
| City, State, Zip: | San Jose, CA 95136-1351 |
| Month: | August 2007 |

This transmittal covers payroll weeks ending in the month shown above.

| | |
|---|---|
| Local Union No. | 332 |
| Federal Registration Number: | 94-3082717 |
| Res Wireman Wage Rate: | $25.62 |
| Total Employed This Period: | 67 |
| Certification code: | 1896 7919 7284 8049 |
| Report type: | NORMAL |

### Grand Totals All Pages

| Total Column #4 | Total Column #5 | Total Column #7 | Total Column #9 | Total Column #10 | Total Column #11 |
|---|---|---|---|---|---|
| Total Pension Paid | Total Training Fund | Total Clock Hours | Total While Earnings | Total Union Dues Withhold | Total Health & Welfare |
| $0.00 | $11,799.90 | 11,238.00 | $234,171.26 | $16,392.00 | $67,989.90 |

| | |
|---|---|
| Total Pension - (Total Column 4) | $0.00 |
| Total Apprentice Training - (Total Column 5) | $11,799.90 |
| Total #332 Dues - (Total Column 10) | $16,392.00 |
| Total Health & Welfare - (Total Column 11) | < $67,989.90 > |
| Total NECA Member Dues<br>Total Straight Time Earnings = $234,171.26<br>(0.20 % of Total Straight Time Earnings or $100 Min.) | $468.34 |
| Total JEIF - (Total Column 7 @ $0.12) | $1,348.56 |
| Total NLMCC - (Total Column 7 @ $0.01) | $112.38 |
| Total AMF - (0.50% of Total Column 9) | $1,170.86 |
| Total EF (Variable) | $0.00 |
| Total Fringe and NECA Amounts | $99,281.94 |

| | |
|---|---|
| NEBF - (3% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "National Electrical Benefit Fund"<br>Proc. 9107 | TOTAL CHECK #1<br>$7,025.14 |
| NECA Service Charge - (0.50% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "NECA"<br>Proc. 9107 | TOTAL CHECK #2<br>$1,170.86 |
| Total Fringe and NECA Amounts<br>MAKE CHECK PAYABLE TO: "IBEW Local 332 Trust Fund" | TOTAL CHECK #3<br>$99,281.94 |

| | |
|---|---|
| MAIL FOUR (4) COPIES WITH YOUR CHECKS TO: | IBEW LOCAL 332 TRUST FUND<br>NEBF & NECA<br>PO BOX 22193<br>OAKLAND CA 94623-22193 |

The employer reporting herein recognizes that it is bound by the Restated Employee Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to the Fund as provided therein. The employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and accurate statement of hours worked and wages earned of all employees subject to employer contributions (pursuant to Article 8 of the Agreement). The employer further certifies that if contributions are made on behalf of non-bargaining unit employees, it is making such contribution in accordance with Article 6 of the Agreement and it is either covering all such non-bargaining employees or alumni employees only, except those who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that if it is reporting on behalf of a related organization as defined in Article 6 of the Agreement, either all employees of the organization or alumni employees only are covered, except those who may be excluded pursuant to Section 6.3 of the NEBF Agreement.

Firm Name: ______________________ Title: ______________

Signature: ______________________ Date: ______________

$73,465 - recvd 11/20/07
< 67,989.90 > to S&C
$ 5,475.10 to undist.

EXHIBIT "C"

# MONTHLY TRANSMITTAL
## ELECTRICAL INDUSTRY ACCOUNTS
UNDER THE JURISDICTION OF I.B.E.W. LOCAL 332 - RESIDENTIAL AGREEMENT

UAS ID# 3482
Permanent Contractor
First or Last report: NO

| | |
|---|---|
| Contractor: | R.P.D. Electrical Service Co., Inc. |
| Street Address: | 242 Hillsdale Avenue |
| City, State, Zip: | San Jose, CA 95136-1361 |
| Month: | September 2007 |

This transmittal covers payroll weeks ending in the month shown above.

| | |
|---|---|
| Local Union No. | 332 |
| Federal Registration Number: | 94-3082717 |
| Res Wireman Wage Rate: | $28.07 |
| Total Employed This Period: | 55 |
| Certification code: | 7121 3878 3462 1934 |
| Report type: | NORMAL |

## Grand Totals All Pages

| Total Column #4 | Total Column #5 | Total Column #7 | Total Column #9 | Total Column #10 | Total Column #11 |
|---|---|---|---|---|---|
| Total Pension Paid | Total Training Fund | Total Clock Hours | Total White Earnings | Total Union Dues Withheld | Total Health & Welfare |
| $0.00 | $7,465.52 | 7,110.00 | $153,259.53 | $10,728.14 | $44,437.52 |

| | |
|---|---|
| Total Pension - (Total Column 4) | $0.00 |
| Total Apprentice Training - (Total Column 5) | $7,465.52 |
| Total #332 Dues - (Total Column 10) | $10,728.14 |
| Total Health & Welfare - (Total Column 11) | $44,437.52 |
| Total NECA Member Dues<br>Total Straight Time Earnings = $153,259.53<br>(0.20 % of Total Straight Time Earnings or $100 Min.) | $306.52 |
| Total JEIF - (Total Column 7 @ $0.12) | $853.20 |
| Total NLMCC - (Total Column 7 @ $0.01) | $71.10 |
| Total AMF - (0.50% of Total Column 9) | $766.30 |
| Total EF (Variable) | $355.52 |
| Total Fringe and NECA Amounts | $64,983.82 |

| | |
|---|---|
| NEBF - (3% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "National Electrical Benefit Fund" | TOTAL CHECK #1<br>$4,597.79 |
| NECA Service Charge - (0.50% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "NECA" | TOTAL CHECK #2<br>$766.30 |
| Total Fringe and NECA Amounts<br>MAKE CHECK PAYABLE TO: "IBEW Local 332 Trust Fund" | TOTAL CHECK #3<br>$64,983.82 |

| | |
|---|---|
| MAIL FOUR (4) COPIES WITH YOUR CHECKS TO: | IBEW LOCAL 332 TRUST FUND<br>NEBF & NECA<br>PO BOX 22193<br>OAKLAND CA 94623-22193 |

The employer reporting herein recognizes that it is bound by the Restated Employee Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to the Fund as provided therein. The employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and accurate statement of hours worked and wages earned of all employees subject to employer contributions (pursuant to Article 8 of the Agreement). The employer further certifies that if contributions are made on behalf of non-bargaining unit employees, it is making such contribution in accordance with Article 6 of the Agreement and it is either covering all such non-bargaining employees or alumni employees only, except those who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that if it is reporting on behalf of a related organization as defined in Article 6 of the Agreement, either all employees of the organization or alumni employees only are covered, except those who may be excluded pursuant to Section 6.3 of the NEBF Agreement.

Firm Name: ______________________ Title: ______________

Signature: ______________________ Date: ______________

EXHIBIT "C"

# MONTHLY TRANSMITTAL
## ELECTRICAL INDUSTRY ACCOUNTS
UNDER THE JURISDICTION OF I.B.E.W. LOCAL 332 - RESIDENTIAL AGREEMENT

UAS ID# 3482
Permanent Contractor
First or Last report: NO

| | |
|---|---|
| Contractor: | R.P.D. Electrical Service Co., Inc. |
| Street Address: | 242 Hillsdale Avenue |
| City, State, Zip: | San Jose, CA 95136-1351 |
| Month: | October 2007 |

This transmittal covers payroll weeks ending in the month shown above.

| | |
|---|---|
| Local Union No. | 332 |
| Federal Registration Number: | 94-3082717 |
| Res Wireman Wage Rate: | $26.87 |
| Total Employed This Period: | 58 |
| Certification code: | 9598 0489 5879 0873 |
| Report type: | NORMAL |

**Grand Totals All Pages**

| Total Column #4 Total Pension Paid | Total Column #5 Total Training Fund | Total Column #7 Total Clock Hours | Total Column #9 Total While Earnings | Total Column #10 Total Union Dues Withheld | Total Column #11 Total Health & Welfare |
|---|---|---|---|---|---|
| $0.00 | $8,780.13 | 8,362.00 | $185,159.29 | $12,861.16 | $52,282.53 |

| | |
|---|---|
| Total Pension - (Total Column 4) | $0.00 |
| Total Apprentice Training - (Total Column 5) | $8,780.13 |
| Total #332 Dues - (Total Column 10) | $12,861.16 |
| Total Health & Welfare - (Total Column 11) | $52,282.53 |
| Total NECA Member Dues<br>Total Straight Time Earnings = $185,159.29<br>(0.20 % of Total Straight Time Earnings or $100 Min.) | $370.32 |
| Total JEIF - (Total Column 7 @ $0.12) | $1,003.44 |
| Total NLMCC - (Total Column 7 @ $0.01) | $83.62 |
| Total AMF - (0.50% of Total Column 9) | $925.80 |
| Total EF (Variable) | $418.13 |
| Total Fringe and NECA Amounts | $76,805.13 |

| | |
|---|---|
| NEBF - (3% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "National Electrical Benefit Fund" | TOTAL CHECK #1<br>$5,554.78 |
| NECA Service Charge - (0.50% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "NECA" | TOTAL CHECK #2<br>$925.80 |
| Total Fringe and NECA Amounts<br>MAKE CHECK PAYABLE TO: "IBEW Local 332 Trust Fund" | TOTAL CHECK #3<br>$76,805.13 |

| | |
|---|---|
| MAIL FOUR (4) COPIES WITH YOUR CHECKS TO: | IBEW LOCAL 332 TRUST FUND<br>NEBF & NECA<br>PO BOX 22193<br>OAKLAND CA 94623-22193 |

The employer reporting herein recognizes that it is bound by the Restated Employee Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to the Fund as provided therein. The employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and accurate statement of hours worked and wages earned of all employees subject to employer contributions (pursuant to Article 8 of the Agreement). The employer further certifies that if contributions are made on behalf of non-bargaining unit employees, it is making such contribution in accordance with Article 6 of the Agreement and it is either covering all such non-bargaining employees or alumni employees only, except those who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that if it is reporting on behalf of a related organization as defined in Article 6 of the Agreement, either all employees of the organization or alumni employees only are covered, except those who may be excluded pursuant to Section 6.3 of the NEBF Agreement.

Firm Name: ______________________ Title: ______________

Signature: ______________________ Date: ______________



EXHIBIT "C"

# MONTHLY TRANSMITTAL
## ELECTRICAL INDUSTRY ACCOUNTS
UNDER THE JURISDICTION OF I.B.E.W. LOCAL 332 - RESIDENTIAL AGREEMENT

UAS ID# 3482
Permanent Contractor
First or Last report: NO

| | |
|---|---|
| Contractor: | R.P.D. Electrical Service Co., Inc. |
| Street Address: | 242 Hillsdale Avenue |
| City, State, Zip: | San Jose, CA 95136-1351 |
| Month: | November 2007 |

This transmittal covers payroll weeks ending in the month shown above.

| | |
|---|---|
| Local Union No. | 332 |
| Federal Registration Number: | 94-3082717 |
| Res Wireman Wage Rate: | $26.87 |
| Total Employed This Period: | 42 |
| Certification code: 12/5/07 3pm | 4412 7617 2785 1690 |
| Report type: | NORMAL |

### Grand Totals All Pages

| Total Column #4 Total Pension Paid | Total Column #5 Total Training Fund | Total Column #7 Total Clock Hours | Total Column #9 Total White Earnings | Total Column #10 Total Union Dues Withhold | Total Column #11 Total Health & Welfare |
|---|---|---|---|---|---|
| $0.00 | $4,200.00 | 4,000.00 | $92,284.54 | $6,459.92 | $25,000.00 |

| | |
|---|---|
| Total Pension - (Total Column 4) | $0.00 |
| Total Apprentice Training - (Total Column 5) | $4,200.00 |
| Total #332 Dues - (Total Column 10) | $6,459.92 |
| Total Health & Welfare - (Total Column 11) | $25,000.00 |
| Total NECA Member Dues<br>Total Straight Time Earnings = $92,284.54<br>(0.20 % of Total Straight Time Earnings or $100 Min.) | $184.57 |
| Total JEIF - (Total Column 7 @ $0.12) | $480.00 |
| Total NLMCC - (Total Column 7 @ $0.01) | $40.00 |
| Total AMF - (0.50% of Total Column 9) | $461.42 |
| Total EF (Variable) | $200.00 |
| Total Fringe and NECA Amounts | $37,025.91 |

| | |
|---|---|
| NEBF - (3% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "National Electrical Benefit Fund" | TOTAL CHECK #1<br>$2,768.54 |
| NECA Service Charge - (0.50% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "NECA" | TOTAL CHECK #2<br>$461.42 |
| Total Fringe and NECA Amounts<br>MAKE CHECK PAYABLE TO: "IBEW Local 332 Trust Fund" | TOTAL CHECK #3<br>$37,025.91 |

| | |
|---|---|
| MAIL FOUR (4) COPIES WITH YOUR CHECKS TO: | IBEW LOCAL 332 TRUST FUND<br>NEBF & NECA<br>PO BOX 22193<br>OAKLAND CA 94623-22193 |

The employer reporting herein recognizes that it is bound by the Restated Employee Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to the Fund as provided therein. The employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and accurate statement of hours worked and wages earned of all employees subject to employer contributions (pursuant to Article 6 of the Agreement). The employer further certifies that if contributions are made on behalf of non-bargaining unit employees, it is making such contribution in accordance with Article 6 of the Agreement and it is either covering all such non-bargaining employees or alumni employees only, except those who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that if it is reporting on behalf of a related organization as defined in Article 6 of the Agreement, either all employees of the organization or alumni employees only are covered, except those who may be excluded pursuant to Section 6.3 of the NEBF Agreement.

Firm Name: ______________________ Title: ______________

Signature: ______________________ Date: ______________

# MONTHLY TRANSMITTAL
## ELECTRICAL INDUSTRY ACCOUNTS
UNDER THE JURISDICTION OF I.B.E.W. LOCAL 332 - RESIDENTIAL AGREEMENT

UAS ID# 3482
Permanent Contractor
First or Last report: NO

| | |
|---|---|
| Contractor: | R.P.D. Electrical Service Co., Inc. |
| Street Address: | 242 Hillsdale Avenue |
| City, State, Zip: | San Jose, CA 95136-1351 |
| Month: | December 2007 |

- This transmittal covers payroll weeks ending in the month shown above.

| | |
|---|---|
| Local Union No. | 332 |
| Federal Registration Number: | 94-3062717 |
| Res Wireman Wage Rate: | $26.87 |
| Total Employed This Period: | 31 |
| Certification code: 1/3/08 3pm | 4645 7936 9616 4755 |
| Report type: | NORMAL |

### Grand Totals All Pages

| Total Column #4 | Total Column #5 | Total Column #7 | Total Column #9 | Total Column #10 | Total Column #11 |
|---|---|---|---|---|---|
| Total Pension Paid | Total Training Fund | Total Clock Hours | Total White Earnings | Total Union Dues Withhold | Total Health & Welfare |
| $0.00 | $3,731.70 | 3,554.00 | $83,553.45 | $5,848.76 | $22,212.50 |

| | |
|---|---|
| Total Pension - (Total Column 4) | $0.00 |
| Total Apprentice Training - (Total Column 5) | $3,731.70 |
| Total #332 Dues - (Total Column 10) | $5,848.76 |
| Total Health & Welfare - (Total Column 11) | $22,212.50 |
| Total NECA Member Dues<br>Total Straight Time Earnings = $83,553.45<br>(0.20 % of Total Straight Time Earnings or $100 Min.) | $167.11 |
| Total JEIF - (Total Column 7 @ $0.12) | $426.48 |
| Total NLMCC - (Total Column 7 @ $0.01) | $35.54 |
| Total AMF - (0.50% of Total Column 9) | $417.77 |
| Total EF (Variable) | $177.70 |
| Total Fringe and NECA Amounts | $33,017.58 |

| | |
|---|---|
| NEBF - (3% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "National Electrical Benefit Fund" | TOTAL CHECK #1<br>$2,506.60 |
| NECA Service Charge - (0.50% of Total Column 9)<br>MAKE CHECK PAYABLE TO: "NECA" | TOTAL CHECK #2<br>$417.77 |
| Total Fringe and NECA Amounts<br>MAKE CHECK PAYABLE TO: "IBEW Local 332 Trust Fund" | TOTAL CHECK #3<br>$33,017.58 |

| | |
|---|---|
| MAIL FOUR (4) COPIES WITH YOUR CHECKS TO: | IBEW LOCAL 332 TRUST FUND<br>NEBF & NECA<br>PO BOX 22193<br>OAKLAND CA 94623-22193 |

The employer reporting herein recognizes that it is bound by the Restated Employee Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to the Fund as provided therein. The employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and accurate statement of hours worked and wages earned of all employees subject to employer contributions (pursuant to Article 6 of the Agreement). The employer further certifies that if contributions are made on behalf of non-bargaining unit employees, it is making such contribution in accordance with Article 6 of the Agreement and it is either covering all such non-bargaining employees or alumni employees only, except those who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that if it is reporting on behalf of a related organization as defined in Article 6 of the Agreement, either all employees of the organization or alumni employees only are covered, except those who may be excluded pursuant to Section 6.3 of the NEBF Agreement.

Firm Name: ______________________ Title: ______________

Signature: ______________________ Date: ______________

ADMINISTRATIVE OFFICES
ELECTRICAL WORKERS LOCAL 332 TRUST FUNDS
MAILING ADDRESS: P.O. BOX 5057, SAN JOSE, CA 95150-5057 • PHONE (408) 288-4400
1120 S. BASCOM AVE., SAN JOSE, CA 95128-3590

ADMINISTRATORS
UNITED ADMINISTRATIVE SERVICES

**Final Request**
10-15-07

Date : July 13, 2007

R.P.D Electrical Service
242 Hillsdale Avenue
San Jose, Ca. 95136-1351

Employer # 3482

Re: NOTICE OF LIQUIDATED DAMAGES ASSESSMENT

Dear Manager/Owner:

This letter is to advise you that your monthly contribution was paid after the 15th of the month.

| Monthly Contribution | Hours Worked | Amount of Contribution | Due Date | Date Paid | Liquidated Damages Assessed* |
|---|---|---|---|---|---|
| 3/07 | 2/07 | $35,095.30 | 3/15 | 6/15/2007 | $3,509.53 |

In compliance with the enforcement of Article III Section 29 of the agreement of fringe benefits trust agreement pertaining to delinquent reporting. We ask that you issue a check to this office in the amount shown above. This does not include any charges that will be assessed against your NEBF.

These Liquidated damages are due and payable within 10 days of receipt of this letter. You may request a waiver of Liquidated Damages one time in a 12 month period by sending a written notice addressed to the Board of Trustees at this address:
P.O. Box 5057
San Jose, CA 95150

Sincerely,

TRUST FUND ADMINSTRATOR

We hereby request a waiver of liquidated damages in the amount of $______ for the month of ______________. We have enclosed all other delinquent payments.
Date: ________________ Signature: ____________________________

EXHIBIT "C"

COLLECTION PROCEDURES

IBEW LOCAL 332 EMPLOYEE BENEFIT TRUST FUNDS
(PENSION, HEALTH AND WELFARE, NEBF, JEIF,
NECA SERVICE CHARGE, NECA, DUES CHECK OFF
AND APPRENTICESHIP TRAINING)

I. DELINQUENCIES

A. Delinquency Procedures of the Administrator

1. All reports from participating contractors are due and payable by the 15th of the month; all reports postmarked after the 15th of each month are considered delinquent and will be charged liquidated damages by the Trust. The envelope showing the postmark is attached to the transmittals.

2. By the 30th of each month, or by the date of the meeting, whichever is earlier, a final delinquency list will be run. In preparing the list, the Administrator shall confer with the union and may also confer with the Collection Attorney. Copies will be distributed as shown below:

a. Union Office
b. Collection Attorney
c. Meeting Folders
d. Fringe Benefit & Guarantee Trust Fund

3. By the 30th of the month, or the meeting date, 48 hour notices will be sent to all employers still showing delinquent on the final list.

4. Immediately following the trust meeting, or receipt of the final list, the Collection Attorney will proceed with collections on those employers on the delinquency list. Collection shall include all monies due and payable on the unified transmittal form submitted to the administrative office which includes pension, health and welfare, apprenticeship training, NEBF, JEIF, Neca Service Charge, NECA and dues check off.

B. Collection Procedures of Collection Attorney

1. In most cases, the Collection Attorney will telephone the employer to discuss the delinquency. The Collection Attorney shall send a demand letter within three days after referral. This letter shall request payment within 10 days.

2. In the event contributions are unpaid ten days after the correspondence from the Collection Attorney, the Collection Attorney shall explore available avenues of collection, including joint check agreements, security interest agreements, stop notices,

EXHIBIT "D"

notification of bonding companies, in addition to filing suit under ERISA.

3. Collection may be pursued through the Labor Commissioner of the State of California where appropriate. In this event, the Collection Attorney shall cooperate with the Labor Commissioner, supply the Labor Commissioner appropriate information, and fill out appropriate claim forms. This method of collection should be taken only where appropriate and upon approval of the Trustees.

II. LIQUIDATED DAMAGES/INTEREST

A. General Provisions

1. Liquidated damages are assessed on transmittals postmarked after the 15th of each month on the following funds: Welfare, Pension, JEIF, Apprenticeship Training. The minimum charge is $20 per fund or 10% whichever is greater.

2. The employer has a right to make a written request that liquidated damages be waived. The Trustees have the power to waive or reduce liquidated damages. Generally, the Trustees will waive one late payment in a 12 month period.

3. Since the calculation and collection of interest on a few days delinquency is not cost effective, interest will not be assessed on delinquent contributions until they are turned over to the Collection Attorney for collection and suit is filed. Interest may be assessed on any delinquency greater than 90 days, even if suit has not been filed.

4. All liquidated damages, accrued interest and attorney's fees collected on delinquent contributions will be maintained in a liquidated damages account and used for collection of the employee benefits. In the event that the collection costs depletes the liquidated damages account, pension and health and welfare will pay collection costs as follows: One-third (1/3) Part A Pension, one-third (1/3) Part B Pension, one-third (1/3) health and welfare. The Trustees have determined that the additional cost of collecting apprenticeship training, NEBF and other ancillary funds does not appreciably increase the collection cost for the pension and health and welfare trusts, and that controlling a unified collection procedure provides substantial advantages to the pension and health and welfare funds. The amounts collected for liquidated damages, attorney's fees and interest for these funds are sufficient to cover any additional collection costs incurred for collecting these monies.

B. Liquidated Damages Procedures of Administrator

1. On the first of each month, the Administrator will send out liquidated damages billings requesting payment in ten (10) days. This letter will inform the employer of their right to request a waiver. The Administrator will send a list of all employers owing liquidated damages.

2. The list of outstanding liquidated damages will be sent to:

a. Union
b. Collection Attorney
c. Fringe Benefit & Guarantee Trust Fund

3. The Administrator shall send a separate list to Union and Collection Attorney showing employers who owe liquidated damages for the current month.

4. Contractors who have outstanding balances of liquidated damages under $500 will remain on the list for a 12 month period. If the contractor incurs no more liquidated damages in that 12 month period, their name and amounts owed will be removed from the list.

C. Liquidated Damages Procedure of Collection Attorney

1. If contractor remains on the liquidated damages list for a period in excess of sixty (60) days without requesting a waiver, the Collection Attorney shall send a letter demanding payment within ten (10) days. If the amount is under $500.00, no further action will be taken.

2. If the total amount exceeds $500.00, the Collection Attorney may be authorized to proceed with collection as set out in Section 1.

III. FRINGE BENEFIT BOND

A. In the event that a contractor is delinquent or late in paying their fringe benefits more than one time in a 12 month period, the Trustees may require the contractor to post a fringe benefit bond (minimum amount of $10,000) in addition to paying all liquidated damages due.

## IV. NSF CHECKS

A. If a check for employee benefit contributions is returned by the bank for insufficient funds, the following action shall be taken. The Administrative Office shall immediately call the employer and inform them that they will be required to submit a certified check to the Administrator's office within 24 hours. This phone call is immediately followed by a letter to the contractor so stating. If the check is not received within 24 hours, the Collection Attorney will be notified.

B. The Collection Attorney will immediately notify the contractor by phone and in writing that the collection on the NSF check has been turned over to their office and that a certified check will be required within 24 hours. If the check is still not received, the Collection Attorney will proceed with the collection procedures as outlined in Section I.B.

## V. AUDIT PROCEDURES

A. Upon completion of the payroll audit, the auditor shall send a copy of the completed audit to the contractor, business agent, NECA representative, the Administrator, and the Collection Attorney. If there is no discrepancy, the Administrator shall immediately send a letter thanking the employer for cooperating with the auditor. If an overpayment is shown, any potential credit will be calculated in accordance with the provisions for refund of mistaken contributions which is attached.

Within 15 days of receipt of the audit, Labor and Management should notify the Administrator that 1) the audit appears to be correct and to proceed with collection of the amounts owed as indicated by the audit; or 2) there are substantial discrepancies in the audit and that further investigation should be taken before a demand for payment is made. If the Administrator receives no response from Labor and Management within 15 days, the Administrator shall assume that the audit is correct.

B. If the audit is approved by Labor and Management, or if there has been no response from Labor and Management as described above, the Administrator shall send a courteous demand letter to the employer with a copy of the audit stating the amount due and requesting payment within ten (10) days, or a response explaining why the contractor feels the amount due is in error.

C. In the event that the employer does not remit monies due or reply appropriately as to discrepancies, the Administrator shall refer the matter to the Collection Attorney. Collection shall proceed as outlined in Section I.

D. If the employer responds in writing challenging the amount due on the audit, or if the audit shows substantial discrepancies which need further investigation, or there appears to be a contract violation regarding fringe benefits, the Trustees shall be notified of the discrepancies and shall make a decision within 90 days as to what action should be taken.

# IBEW LOCAL 332 TRUST FUNDS LIQUIDATED DAMAGES REVIEW AND ASSESSMENT OF COST OF COLLECTION (CURRENT COLLECTION PROCEDURE)

IBEW Local 332 Employee Benefit Trust Funds have a unified collection policy and procedure whereby all the contributions due to the Trust Funds are submitted on a single transmittal and collection is pursued for all the amounts due on that transmittal. Payments are due on the 15th of the month, and if they are not postmarked by the 15th, liquidated damages of 10% are assessed.

The IBEW Local 332 Employee Benefit Trust Funds have a detailed collection policy and procedure. Pursuant to that procedure, the administrative office is required to take immediate action on delinquent contributions. By the 30th of the month, or the date of the trust meeting which is generally the fourth Thursday of the month, a delinquency list must be prepared and sent to the union, the collection attorney, the Fringe Benefit and Guarantee Trust Fund, and put in the meeting folders. In addition, the administrator contacts the collection attorney and the union office to go over the delinquent contributions. Immediately following the trust meeting, or by the 30th of the month, any delinquent contractors who have not paid are turned over to the collection attorney.

The Trust Funds have a policy for allowing a waiver or reduction of liquidated damages. The Trustees have the discretion to waive all or a portion of liquidated damages based on a waiver request of the employer. The Trust Funds have a written policy of automatically waiving liquidated damages one time in a 12 month period for every employer. In addition, other reasons for waiving or reducing liquidated damages are taken on a case-by-case basis by the Trustees.

The Trust Funds also have a payroll audit policy whereby all companies are audited on a random basis over a five year period. A copy of the collection policy is attached to this evaluation.

## EVALUATION OF COLLECTION COSTS (Administrative Offices)

The Trustees of the Trust Funds requested that the administrative office, in conjunction with the attorney, the auditor, and the local union, evaluate the collection costs and time spent in collecting delinquent contributions for the Trust Funds.

Liquidated damages are assessed for any payments postmarked after the 15th of the month because it is necessary for the administrative office to distribute credits to all

the employees and close the books by the end of the month. A delay of even one contractor can result in a delay of closing and additional costs and time spent by the administrative office.

The following actions on delinquent accounts are taken by the administrative office every month:

1. The delinquency list is prepared and distributed to the parties pursuant to the collection report.

2. The administrative office calls the union to make sure the contractors on the delinquency list have employees.

3. The administrative office contacts the attorney to go over the final delinquency list prior to sending it to the parties involved.

4. After the delinquent employers are contacted by phone to determine what the problem is regarding their delinquent payment, liquidated damages are calculated and a liquidated damages list is prepared.

5. Delinquent letters are sent to all employers who have not paid by the close of the books.

6. Liquidated damage letters are sent to all contractors who's reports were postmarked after the 15th of the month.

**HEALTH AND WELFARE.** Late payment of trust fund contributions may result in the following extra work and damages related to the processing of health and welfare payments and eligibility.

1. Employees lose their health care coverage.

2. Health care claims are denied due to loss of eligibility.

3. Often participants who lose benefits for health and welfare are forced to cancel appointments which can never be recouped because of late payments.

4. The union office and the trust fund office both have to field telephone calls from providers, emergency room hospitals, and pharmacies regarding eligibility questions for health and welfare.

5. Health and welfare claims have to be processed retroactively when the payments are received.

6. Eligibility tapes sent to pharmacies and providers must be revised when late payments are received.

7. COBRA letters must be sent to participants who have lost benefits because a contractor has not paid.

The time spent on activities directly related to loss of coverage increases dramatically with the greater the amount of the delinquency and the number of participants involved.

In regards to health care eligibility, the more employees the delinquent contractor has, the more time spent fielding eligibility calls and concerns from both providers and participants.

**Estimated time and damages:** The processing of the unified transmittals and the processing of health care eligibility are handled by the same division of the administrative office for the Trust Funds. Currently the administrator employees three full time employees to handle this aspect of trust fund operations for local 332 Trust Funds. The full time Customer Relations Employee fields all phone calls from employees regarding lost eligibility, lost cobra coverage, delays in sending reciprocity checks, and provider phone calls related to late eligibility information. She spends approximately 80% of her time (135 hours per month) resolving problems or fielding phone calls which were caused by late payments of contributions. The employee handling the clerical work spends an average of four hours per month handling to delinquent correspondence and other clerical work. The data processing clerk spend an average of three hours per month on work related to late or delinquent payments of contributions.

**Total estimated time spent by administrative office: Average 142 hours per month**

**PENSION PLAN.** Late payment of trust fund contributions may result in the following extra work and damages by the Pension Department.

1. The pension plan cannot credit pension benefits.

2. Participants lost interest on delinquent contributions not deposited to trust funds.

3. Pension technicians are unable to calculate benefits for participants who apply for retirement during the delinquency.

4. Pension contributions must be charged retroactively, including lost interest which results in considerable additional work by the administrative office.

5. Credits for vesting and benefits must be calculated when late payments are received.

**ESTIMATION OF TIME SPENT.** These costs are directly related to the number of employees and the size of the delinquency. As the number of employees not receiving pension benefits increases, the number of phone calls, explanations, and work increases proportionately.

Estimated Time Spent: 1 - 2 hours per month, depending on delinquency.

**EVALUATION OF COLLECTION COSTS (BOARD OF TRUSTEES).**

The Board of Trustees spends time at every meeting dealing with delinquencies. The larger the delinquency, the more time the Trustees spend at the meeting. Collection reports are made for each meeting, and actions taken on these delinquencies regarding collections, waiver of liquidated damages, etc. Union Trustees must field calls from members and work with collection attorney and administrative office to determine amount of delinquency, etc. For large delinquencies, a collection subcommittee may be needed to address the problem involved. The union office and labor trustees must field calls from employees and assist in obtaining lien and stop notice information for those months.

Estimated Time Spent: Average two hours per month

**EVALUATION OF COLLECTION COSTS**
**(Attorney)**

The collection policy requires that the collection attorney be involved with the delinquency within 10 days after payment is not received. The collection attorney takes the following action on a monthly basis.

1. Receives a copy of the collection delinquency list, prepares a delinquency report for the Board of Trustees.

2. Attends trust meetings for a review of the delinquent contractors.

3. Sends demand letters to the delinquent contractor.

4. Makes phone calls to the delinquent contractor.

5. Works directly with the union regarding delinquencies.

Often delinquent contractors are delinquent because they do not have the money to make payment and other avenues of collection rather than filing an ERISA complaint in federal court must be made. These include,

1. Making arrangements for joint checks, filing liens and stop notices.

2. Contacts the union and employees for payroll information and locations where they were working.

3. Notifies the employees of the delinquency and requests job site information. This information must be processed, amounts due on each job calculated.

4. File mechanic's liens and stop notices, complaints in state court. (Liquidated damages, attorney's fees and costs are not collectable from these third party payers).

Estimated Time Spent at $175.00 per hour: Average on all collections 10 to 15 hours per month.

## EVALUATION OF COLLECTION COSTS
## (Auditor)

**AUDIT PROCEDURES.** The Trust Funds have a unified audit procedure which involves auditing all of the contractors over a five year period. If the audits do not show any discrepancy, no action is taken and the audit cost is borne by the Trust Fund. The audit procedure is instituted to insure correct payment. The Trustees and the auditor spend considerable time performing the audits, reviewing the audit decisions before any delinquencies found in the audit are turned over to the attorney for collection. These costs are not recouped.

Estimated Costs: $8,900.00 per year - average over five years

The above are only part of the expenses incurred by the Trust Funds in collecting delinquent contributions. These costs are very difficult to quantify as they vary substantially from delinquency to delinquency.

**INDIRECT COSTS.** In addition to the above costs, there are other indirect costs which are even more difficult if not impossible to quantify. For example,

1. Employers that pay on time are penalized by employers who chronically make delinquent payments and use the trust funds' assets to their benefit.

2. Without liquidated damages there would be no incentive for employers to pay on time. This would result in increased chronic late payers, lost interest to the trust funds, and additional time spent by the administrative office, trustees and attorney as described above.

3. If more than one or two large employers are delinquent in any one month, it can seriously jeopardize the ability of the administrative office to function at all; to close out the books, and adequately credit all the employees' hours. This may result in additional overtime work and could jeopardize the payment of employee benefits to the employees.

**TRUSTEES' RECOMMENDATIONS**

On December 7, 2001, the Trustees reviewed the above cost analysis and the auditor's evaluation of collection costs and liquidated damages assessment. After careful review and discussion, the Trustees determined that the ten percent (10%) liquidated damages that the Trust Funds currently charge is a reasonable calculation of the costs incurred for late payments.